THOMAS W. GRISWOLD *vs.* RALPH F. COOK AND OTHERS.

*J* occupied the farm of *G* under a contract by which *G* "leased" the farm to him, with the stock on it, for one year, with a provision that the stock and all the products of the farm were to be the property of *G* until all the obligations of *J* under the contract were discharged. Before these obligations were discharged a quantity of hay cut by *J* on the farm and stored in a barn on the premises, was attached by a creditor of *J* as his property. Held—

1.   That the hay was the property of *G* and not of *J*.

2.   That *G* was sufficiently in possession of it to maintain trespass for the taking.

The use of the word "lease" in the contract did not determine its character, but the whole contract was to be taken together.

Held also that a provision that *G* was to have a "lien" on the products of the farm, was not to be taken in its literal sense, as the contract provided in terms that they were to be the property of *G*.

TRESPASS for taking and carrying away a quantity of hay belonging to the plaintiff; brought to the Superior Court in Litchfield County. The case was tried to the court, before *Sanford, J.*, on the plea of the general issue, with notice that the hay was taken by attachment as the property of one Dwight W. Johnson.

Johnson was, at the time of the attachment, in the occupancy of a farm belonging to the plaintiff, under a contract of which the following are the principal clauses:

"Know all men by these presents that I, Thomas W. Griswold, do hereby lease to Dwight W. Johnson, all that farm of land, * * for the term of one year from the 1st day of April, 1874, with a dwelling-house and other buildings thereon. Also twelve milch cows for said term. * * And I, the said Johnson, do hereby covenant and agree that I will cultivate said farm in a husbandlike manner; will sow such grass seed as said Griswold shall furnish for that purpose; will take good and proper care of the cows and oxen above mentioned; will commit no waste on said farm and will keep the fences thereon in sufficient repair, and will feed out on said farm all the hay and fodder raised thereon during said year, and leave thereon all the manure that shall be made thereon. And it is further agreed that I shall pay to said Griswold $200 for the use of said farm during said term, and the interest at six per cent. per annum on the appraised value of said cows * * as estimated on the 1st of April next, in equal quarterly payments on the 1st days of July, October, January and April. * * And it is agreed between said parties that said Griswold shall furnish what hay is necessary for said cattle this spring, and that said Johnson shall at the end of the year leave the same amount and of the same quality on the farm for said Griswold. The said cattle are to be and remain the property of said Griswold, and said Johnson shall not sell, exchange, or otherwise dispose of the same. All of the products of the farm shall also be and remain the property of said Griswold, and he is to have a lien on the same till all the obligations of said Johnson assumed in this instrument are paid, satisfied and discharged. Dated March 28th, 1874."

The contract was renewed at the close of the first year, for another term from April 1, 1875, to April 1, 1876.

In December, 1875, the defendants attached and took away a quantity of hay which had grown upon the farm and had been cut by Johnson during the preceding summer, and which was stored in a barn on the premises.

The court rendered judgment for the plaintiff and the defendants moved for a new trial.

*E. W. Seymour* and *C. B. Andrews,* in support of the motion.

1. The plaintiff had no title to the hay which the defendants attached. The contract between the plaintiff and Johnson was a lease. It used the word "lease" as the only word of conveyance from the plaintiff to Johnson. It created the relation of landlord and tenant between the parties. It gave to Johnson the possession of the farm for a certain time in consideration of a certain rent. These elements make a lease. Taylor's Landlord & Tenant, § 14; 1 Washb. R. Prop., (4th ed.,) 436. It is admitted and found that Johnson had the possession of said farm and the buildings thereon by virtue of said contract at the time of the attachment and removal of said hay. He was by reason of said lease and his possession under it the absolute owner of the premises for the term granted. There is no condition or qualification of Johnson's title to the real estate as tenant. He owned an estate in the land for the term. Taylor's Landlord & Tenant, §§ 14, 15; 1 Washb. R. Prop., (4th ed.,) 436, 535, 575; 2 Bla. Com., 317; *Butterfield* v. *Baker,* 5 Pick., 522; *Munsel* v. *Carew,* 2 Cush., 50; *Doremus* v. *Howard,* 23 N. Jer. (Law,) 390. Johnson was the owner of this hay. It did not become a "product" till long after he had been in the possession of the farm. A lessee owns the products because they are the increase, the increment, of the estate which he owns. The clause in the lease that the plaintiff should own or have a lien on the products cannot affect this ownership of Johnson. (1st) Because that clause is repugnant to the rest of the contract. (2d) Because that clause cannot have effect in

any way to change Johnson's ownership. It is not a reservation out of the thing granted, for the thing granted is real estate and not personal property. Nor is it a sale back from Johnson to Griswold, for the reason that this "product" not then being in existence could not be the subject of a sale, either absolute or conditional. And because that clause, if it confers any right on the plaintiff, gives him a right in the nature of a mortgage, and until foreclosure Johnson was the owner. (3d) Because that clause is inconsistent with itself. It first says the plaintiff is to be the "owner" of the products; then it says he is to have a lien on them. A man cannot have a lien on his own property. A lien is a claim which one person has upon the property of *another* as a security for some debt or charge. Bouvier Law Dict. *in verb.*

2. The plaintiff had no such possession of this hay as will enable him to maintain an action of trespass. It is conceded that he did not have the actual possession. That was in Johnson. He did not have any constructive possession. He had no title such as would sustain a constructive possession. At most he had only a qualified property in the hay. There must be an absolute ownership in order to sustain a constructive possession. The general owner of goods cannot sustain trespass when there is an outstanding possession in another accompanied with a special property. Constructive possession such as will enable the general owner to maintain trespass, is where the actual possession is in a mere agent or servant of the owner. Whenever the actual possessor has an interest in or a right to the beneficial use or enjoyment of the property, or has the right to retain it in his possession, the general owner cannot sustain an action of trespass. *Bourne* v. *Merritt*, 22 Verm., 429; *Putnam* v. *Wyley*, 8 Johns., 337; *Ward* v. *Macauley*, 4 T. R., 489; 1 Hilliard on Torts, 502; Taylor's Landlord & Tenant, § 780. The right of possession means the right to take possession at pleasure, and cannot exist where the actual possessor has any beneficial interest in the property. Waterman on Trespass, § 522; *Remington* v. *Cady*, 10 Conn., 44.

*G. C. Woodruff,* contra.

PARK, C. J.   The contract entered into between the plaintiff and Johnson regarding the improvement of the plaintiff's farm, must govern this case.   All the rights that Johnson had in the hay, which is the subject of the controversy, accrued to him under that contract.   This is clear.   We find it there stipulated that all the products of the farm shall remain the property of the plaintiff till all the obligations of Johnson under the contract shall have been discharged.

When the hay in question was attached by the defendants those obligations were not discharged.   Johnson was then in arrears in the payment of money which the contract required him to pay.   Indeed it is difficult to see how his obligations could be fully discharged before the end of the year.   He was to pay the plaintiff a certain sum of money at the end of every three months during the year, to pay interest on a certain sum at the same time, to improve the farm in an husbandlike manner, and to feed out all the hay and fodder on the farm, which necessarily required the whole year for their performance.   How then can it be said, that when the hay in question was attached by the defendants it was the absolute property of Johnson, and that he could have removed it from the farm and sold it to the highest bidder?   If Johnson could not have done this, then the defendants could not legally do it, for they derived all their right to the property from him. We are not now considering a case where personal property has been sold and the vendor remains in possession, which would be fraudulent in law against creditors, but a case where the property never became the property of the debtor.   In such a case the creditor takes the place of his debtor, and stands or falls as the debtor would have done in attempting to do the same thing.   If this property was the property of Johnson at the time it was attached, it became his by virtue of some contract.   The farm belonged to the plaintiff, and consequently the products of the farm were his unless he had parted with them by some contract.   Did he part with them by this contract, which declares that they shall remain his till

certain obligations shall have been performed, which never were in fact performed?

But the defendants claim that by the contract the farm was leased to Johnson, and that consequently the products of the farm became his as the owner of the leased premises, notwithstanding the provision in the contract to the contrary. It is true that the contract contains the word "lease," but it is clear from the whole contract that the word was not used in its technical sense. The plaintiff had a stocked farm which he wished to have improved. Johnson desired to improve it. It is to be inferred from the contract that he was a person without means. The plaintiff desired to be secured for the use of the farm, and against its impoverishment by the removal of the hay. He could only be secured by means of the products of the farm. Hence the provision in the contract, that the products shall remain the plaintiff's till Johnson shall have performed the obligations which he assumed. In this way and in this way only could the plaintiff be effectually secured, and Johnson be enabled to enjoy ultimately all the benefits of a lessee of the farm. But it was necessary that Johnson should occupy the farm in order to carry out the arrangement. For the want of a better word to describe this occupancy, the word "lease" was used in the contract. Any other construction would defeat the manifest purpose and intent of the parties, as gathered from the whole instrument.

It is further said that, in connection with the clause, "all the products of the farm shall be and remain the property of said Griswold," is the further clause, "and he is to have a lien on the same." This latter provision, it is contended, concedes that the products would be Johnson's, for one can not have a lien on his own property. It is evident that there was here a careless use of the word "lien." But to give it the meaning contended for would place this provision in direct opposition to the preceding one, which can have but one construction. The two clauses are connected by the conjunction "and," which implies that the matter which follows is something in addition to what has gone before. It

was intended therefore not to qualify but to add to and make secure the right before provided for. Obviously the word was used in the sense of right, so that the passage taken as a whole means only that the property was to remain the plaintiff's, and that he was to have the right to the same.

We think the hay in question belonged to the plaintiff on the principle established in the case of *Brown* v. *Fitch*, 43 Conn., 512.

The view we have taken of this question renders it unnecessary to consider at any length the further claim of the defendants, that the plaintiff had no such possession of the hay as would enable him to maintain an action of trespass. Johnson was in the occupancy of the farm to improve it under the contract. He had the actual possession, but the plaintiff had the constructive possession, together with the right of ownership of the hay. We think his possession was sufficient.

A new trial is not advised.

In this opinion the other judges concurred; except GRANGER, J., who did not sit.